[No. 8113.]

## LOWELL HARDWARE COMPANY V. MAY ET AL.

1. MECHANIC'S LIEN—*Lien Statement—Non-Lienable Articles.* A lien statement which includes articles for which no lien is allowed by statute will not deprive the claimant of his lien for articles which are within the statute, provided the statement was not wilfully false. The claimant will be permitted to make the necessary segregation, by his proofs, and the improper items being rejected, a lien will be declared for the residue. (476.)

2. —— *Statement—Name of Owner.* Prior to December, 1908, The Lucania Tunnel, Mining & Drainage Co. held title to the premises upon which the lien was claimed. In that month there was a reorganization of the enterprise, and the title passed to The Lucania Tunnel & Mines Co., the officers and management remaining the same. The sign at the premises, and the sign upon the windows of the office, remained, bearing the name of the original corporation. The lien statement claiming for supplies furnished, subsequent to this change of ownership, named the original company as the "owner or reputed owner." It was accepted by the agent of the new company without objection or protect. The lien claimant had acted in good faith in so designating the owner. A decree establishing the lien was affirmed. (479-482.)

3. —— *Construction of the Statute.* The statute is to receive a liberal construction. Mistakes which do not tend to deceive, may be overlooked. (477, 478.)

*Error to Clear Creek District Court.* Hon. H. S. CLASS, Judge.

Mr. E. L. REGENNITTER and Messrs. MORRIS & GRANT, for plaintiff in error.

Mr. HARRY E. KELLY and Mr. CHARLES H. HAINES, for The Lucania Tunnel and Mines Co.

SCOTT, J., delivered the opinion of the court.

This is an action to foreclose a mechanics' lien. On the 25th day of April, 1910, the defendant, The Lucania Tunnel and Mines Company, entered into a written contract with the defendant J. J. May, to drive the tunnel of the said company, known and designated in the contract as The Lucania Tunnel, a distance of five hundred feet at a stipulated price per foot.

The plaintiff in error, plaintiff below, furnished materials for the work to the contractor, May, to the extent of $5,007.13, upon which account there was paid the sum of $1,163.60, leaving a balance due of $3,843.53, to secure the payment of which the plaintiff on the 3d day of December, 1910, filed its lien statement with the proper officer, claiming a lien on the premises of the defendant for the amount due for materials sold and delivered. At the close of plaintiff's testimony the defendants moved for a nonsuit upon the ground that the evidence offered is not sufficient to constitute a cause of action against either of the defendants. This motion was granted by the court, without the assignment of any specific reason therefor, and the plaintiff brings the case here for review.

The contentions of the defendant, The Lucania Tunnel and Mines Company, to justify the ruling of the court, which seem in any wise important to consider, are: 1. Lienable and non-lienable items are inextricably mixed in plaintiff's claim of lien. 2. Failure to name the proper owner of the property in the statement of lien.

Upon the first contention, there is no claim that the lienable articles if any, could not be easily and readily separated from any that are non-lienable. This contention has been disposed of by this court in the case of *Barnes v. C. S. & C. C. D. Ry. Co.,* 42 Colo. 416, 94 Pac. 570, where it was said:

"It is also claimed by the appellee that the lien claimed was for articles which were non-lienable as well as those which were lienable, and that in consequence thereof no lien could attach to the property, or any judgment be rendered enforcing the lien. The rule seems to be that although a claim of lien was in part for articles not the subject of lien, it will not vitiate the claim if it was not willfully false, and the court will permit the claimant by proof to make the necessary segregation, throw out the value of such articles, and declare a lien for the remainder. *Gordon Hdw. Co. v. R.*

R. Co., 86 Cal. 622, 25 Pac. 125; Allen v. Elwert, 29 Ore. 428, 44 Pac. 823, 48 Pac. 54; Maynard v. Ivey, 21 Nev. 241, 29 Pac. 1090; Boisot on Mechanics' Liens, sec. 428, and cases cited."

The lien statement alleged that the defendant, The Lucania Transportation, Tunnel, Mining and Drainage Company, is the owner and reputed owner of the premises.

It appears that title to the property was in that company until the 14th day of December, 1908, when it was transferred to the defendant, The Lucania Tunnel and Mines Company, which seems to have been simply a re-organization of the old company with the same officers and management, and substantially the same ownership.

There was no evidence of notice of the change in the transfer of ownership, save and except the record of the deed. The business signs both at the tunnel plant, and at the office of the company, retained the name of the old company, and it is clear that the plaintiff honestly believed at the time of filing the statement of lien that the old company was the owner of the property. Both corporations were designated by the particular word "Lucania", and the property was known as the "Lucania Tunnel". Service of the notice of the filing of the lien was made upon the resident agent and officer of the new company, who had held the same position with the old company.

Certainly the defendant owner could not have been prejudiced or misled, nor does it so claim, and no other party makes any such claim.

The extension of the tunnel was constructed with the knowledge and under the contract of the new company. It was a continuation of the same business by the same persons, but under a different corporate name.

The rule was announced by this court in the case of Cannon and Douna v. Williams, 14 Colo. 21, 23 Pac. 476, that while there must be a substantial compliance with all material requirements of the statute, yet mechanics' lien stat-

utes being equitable in purpose, and remedial in nature, are to receive a liberal construction by the courts, and that mistakes that do not tend to deceive parties interested may be overlooked.

In construing the term "reputed owner," it was said by the Supreme Court of California, *Santa Cruz Rock Co. v. Lyons,* 43 Pac. 599:

"The Century Dictionary defines the words 'reputed owner' as 'a person who has to all appearances the title to the possession of property'. Anderson's Law Dictionary defines the same words as 'one, who, from all appearances or from supposition, is the owner of a thing; as of property subject to taxation or to assessment for a municipal improvement.' And Burrill's Law Dictionary defines the word 'reputed' as 'considered'; 'generally supposed'. And it is added: This word has a much weaker sense than its derivation would appear to warrant, importing merely a supposition or opinion derived or made up from outward appearances, and often unsupported by fact. The term 'reputed owner' is frequently employed in this sense. 2 Steph. Comm. 206."

Our statute required that the lien statement shall contain "The name or names of the owner or owners, or reputed owner or owners of the property, or in case such names or name be not known to him a statement to that effect."

And it is generally held:

"Where the statute requires a statement of the name of the owner or reputed owner it is sufficient to designate a particular person in the conjunctive as owner and reputed owner, or in the alternative as owner or reputed owner." 27 Cyc. 167.

In *Installment Building & Loan Co. v. Wentworth,* 1 Wash. 467, 25 Pac. 298, it was held:

"In the notice of claim of lien, the defendant corporation was described as 'Installment Building & Loan Association,' whereas, in fact, its true name was 'Installment Building & Loan Company.' The notice of claim of lien is at-

tacked on the ground of this variance between it and the pleadings and proofs. We do not think that the variance was material. The corporation itself was making the improvement, and could not have been misled by the slight error in stating its name. The case might be different if the property of the corporation was sought to be charged for an improvement for which it had not contracted."

In this case the defendant company contracted for the improvement; was the only party interested in the improvement; kept in close touch with the improvement; was the only party benefitted by the improvement, and by virtue of a provision in the contract was to withhold twenty per cent of the contract price as the work progressed, and according to the testimony still withholds more than one thousand dollars of the contract price, though it accepted the contract.

It advertised, in the only way usual in such cases, that it was doing business in the name of the old company, by the signs painted on its property, and upon the window of its offices in town, containing the name of the old company. It accepted service of notice of the filing of the statement of lien, addressed to the old company, without suggestion, objection or protest.

Under our statute, the name of the actual owner, either legal or equitable is not required. It requires the name of the owner or reputed owner, and in this case the corporation named in the lien statement was plainly the reputed owner. If the name of the owner is not known, it need not be given. An affidavit to that effect is sufficient. Where the name of the reputed owner is given, no such affidavit is required.

The statute provides as to service of notice of the lien statement: "Such notice may be given by delivering the same to the owner or reputed owner personally, or by leaving it at his residence or place of business with some person in charge, or by delivering it either to his superintendent of construction, agent or architect, or by leaving it either at their residence or place of business, with some person in

charge; no such notice shall be invalid or insufficient by reason of any defect of form, provided it is sufficient to inform the owner or reputed owner of the substantial matters herein provided for, or to put him upon inquiry as to such matters."

The notice contained the name of the reputed owner, the officers of which were the same as those of the new company. The lien statement named J. J. May as the contractor, as provided by the statute. It described the Lucania Tunnel property, owned by the new company, and which it secured from the old company. It informed the owner of all substantial matters concerning the claim of lien, and plainly it was sufficient to put the new company upon inquiry as to such matters.

The statute further provides:

"Upon such notice being given, it shall be the duty of the person who contracted with the principal contractor, to, and he shall, withhold from such principal contractor, or from any other person acting under such owner or reputed owner, and to whom, by said notice, the said labor or materials, or both, have been furnished or agreed to be furnished, sufficient money due or that may become due, to said principal contractor, or other persons, to satisfy such claim, and any lien that may be filed therefor for record under this chapter, including reasonable costs provided for in this act; and the payment of any such lien, which shall have been acknowledged by such principal contractor, or other person acting under such owner or reputed owner, in writing to be correct, or which shall have been established by judicial determination, shall be taken and allowed as an off-set against any moneys which may be due from the owner, or reputed owner to such principal contractor, or the person from whom such work and labor was performed."

The notice was sufficient to give the owner every opportunity so provided to protect himself in so far as the statute makes such provision.

Indeed, the objecting defendant, company, appears to have availed itself of this provision by withholding more than one thousand dollars from the principal contractor.

In the case of *Empire Co. v. Engley,* 18 Colo. 388, 33 Pac. 153, there appears to have been several assigned claims of lien. In that case one lien claimant Clark, filed notice directing the same to State Land No. 2 Canal Company. Smith and Wilson, other lien claimants directed the notice to Stanger, as owner. The legal title to the property at and **before the filing of the statements was in J. S. Stanger.** The possession was in the Canal Company. It was also contended that there were other persons interested in the title. This court sustained the liens, and it was there said:

"We are not prepared to say that the possession of the premises in controversy by the original owners, Leese, Bingle and Davis, or by Stanger, or by the State Land No. 2 Canal Company, or by Strong, or by the plaintiff in this case, or the want of possession by Smith & Wilson, or by defendants in this case, or either of them, at any particular time, necessarily renders the mechanics' liens, or the proceedings to enforce the same, void; nor are we prepared to say that such liens are void *in toto* under secton 1 of the act of 1881, merely because Stanger did not hold the legal title to the premises when the work was first commenced by the lien claimants. *Non constat,* he may have had some kind of interest, tenancy, or claim in or to such premises. Neither the possession of, nor the legal title to, the land upon which a mechanics' lien is claimed is necessarily conclusive of the mechanics' or laborer's right to a lien upon such land or upon the structure which he has constructed thereon."

The present case does not involve the rights of a subsequent encumbrancer or purchaser, but the right only of the party in possession and who was the title holder, contracting for the improvement.

In *McPhee v. Litchfield,* 145 Mass. 565, 14 N. E. 523, 1 Am. St. 482, the statute required the statement should show,

"The name of the owner or owners of such property, if known." It was recited in the statement, "Owned to the best of my knowledge and belief by Catherine Broderick." The property was in fact owned by the defendant McNamara, but it appeared that the claimant believed Broderick was the owner. The court said:

"The statute and the decisions regard it as important that the name of the owner should be given in the certificate, if it can be done, because, otherwise, subsequent purchasers who buy upon the faith of the registry title are liable to be misled; and it has been held that, if a petitioner knows the true owner and gives a wrong name in his certificate, it avoids the certificate and he loses his lien. * * * This case, then, is one where the name of the owner is unknown. If the certificate had so stated, no fault could be found with it. Does the fact that the petitioner innocently states his belief that the respondent Broderick is the owner, vitiate the certificate? So to hold would be to import into the statute a provision not found there. We are of opinion that this cannot be done, especially in a case like this, where the honest mistake of the petitioner has not in any way misled or injured the respondents."

Under the facts and circumstances of this case we are of the opinion that the statement was sufficient as to the defendant contracting for the improvement.

*The judgment is reversed.*

*En banc.*

White, J., not participating.